On the last Circuit at Halifax, a verdict was taken for the plaintiff, subject to the opinion of the Court, upon the following facts. The negroes in dispute originally belonged to the defendant, and upon the marriage of his daughter with John B. Mebane, had, with several others, been given by parol to the said Mebane. All these negroes continued in Mebane's possession from the time of the gift, in the year 1813, until his death in 1820. Mebane by his will gave them to his two children, Martha and Cornelia, then infants of tender years, and thereof he appointed the defendant an executor, and testamentary guardian to his children. During their non-age, the defendant, as their guardian, hired out the slaves annually. In the year 1831, the plaintiff intermarried with Cornelia, and the defendant then divided the slaves, and the notes he held for their hire, between the plaintiff and Martha; and in January 1832, delivered to the plaintiff the share that fell to him. The slaves in dispute being a woman and a family of small children, the plaintiff left in the custody of his brother, William Hamlin, living near the defendant in the county of Chatham, and removed the others to his house in Halifax. The wife of the plaintiff died in the year 1832, and in January 1833, the defendant resumed the actual possession of all the slaves he had delivered the plaintiff, excepting those in dispute, which could not be readily removed from the house of William Hamlin. *Page 270 
The defendant made an agreement with William Hamlin, to keep them for one year for the sum of fifty dollars. Upon the resumption of the possession of the slaves, and the agreement between the defendant and William Hamlin being communicated to the plaintiff, he wrote to the defendant a letter dated the 4th of January 1833, in which he submitted his claims to the defendant's sense of justice; and among other things, stated, that if he, the defendant, did not think that he (the plaintiff), was entitled to the negroes, "I resign them to you" (the defendant) "as the lawful owner." About the time of this correspondence, the plaintiff informed his brother that he should claim the negroes in dispute to be in his possession, under his bailment to William, until that bailment was destroyed by the defendant's resuming the actual possession of them by carrying them to his own house. An agreement in all things similar to that above-mentioned, was made between the defendant and William Hamlin, for keeping the negroes during the year 1834 and 1835, and the defendant never removed the negroes to his own house until the latter part of the last mentioned year. If, upon these facts, the plaintiff had such an adverse possession of the slaves as to complete his title under the act of 1820, (Rev. c. 1055,) then the verdict was to stand; otherwise to be set aside and a non-suit entered.
His Honor Judge BAILEY, set the verdict aside, and directed a nonsuit to be entered; and the plaintiff appealed.
— The superior title of the defendant could be lost only by an actual possession adverse to him and continued for three years. We think with the Judge who tried the cause, that such a possession does not appear in this case. Although William Hamlin, as between themselves, might not have been allowed to withhold the slaves from the plaintiff, from whom he derived the possession, yet, for a like reason, he was *Page 271 
under an equal obligation to surrender them to the defendant. As between William and these parties, he was the bailee of each; and consequently his
possession, as such, could not be adverse to either. It follows, that the plaintiff could not, by means of it, gain that which the defendant did not lose by it.
But the case does not depend only on the original relation of William Hamlin to the parties; it is yet stronger for the defendant. He not only claimed the slaves, and took the engagement of William to hold for him, but this claim and engagement were communicated to the plaintiff, and assented to by him. Upon receiving information of those facts, the plaintiff wrote the letter dated 4th January 1833. In that letter he does not assert a possession in himself: on the contrary, he disclaims the right, "resigns the slaves to you" (the defendant,) as "the rightful owner;" and refers his interest to the liberality of the defendant. This terminated the obligation of William to retain possession for the plaintiff; and it was never re-assumed. The plaintiff, indeed, afterwards informed his brother that he should insist that the negroes were in his possession under his bailment, unless the defendant should personally take the actual possession from William; but the latter disregarded the notice, and ever after held, by express agreement, for the defendant alone.
We think it clear, therefore, that there has been no possession by or for the plaintiff, which, of itself can constitute a title as against this defendant; and the judgment is affirmed.
PER CURIAM. Judgment affirmed. *Page 272